# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JASMINE REYNOLDS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> _____ ) | CIVIL ACTION <br><br> No. 09-1340-JWL |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act, finding childhood disability under Title XVI ended on June 1, 2007, and finding supplemental security income (SSI) was properly terminated thereafter pursuant to a disability redetermination made in accordance with 1614(a)(3)(H)(iii) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(H)(iii) (hereinafter the Act). Finding error as alleged by Plaintiff in the ALJ's hypothetical questioning of the vocational expert, the court ORDERS that the Commissioner's decision is REVERSED, and that judgment shall be entered in

accordance with the fourth sentence of 42 U.S.C. § 405(g), REMANDING the case for further proceedings consistent with this opinion.

I.    **Background**

Plaintiff is a young woman who received SSI benefits based on disability as a child. (R. 16, 27). After attaining eighteen years of age, Plaintiff's eligibility for SSI benefits was redetermined pursuant to the Act and the regulations, and it was determined that Plaintiff's condition is not severe enough to meet the definition of disability for adults and that she was no longer disabled effective June 1, 2007. (R. 16, 28, 30-35); see also, 42 U.S.C. § 1382c(a)(3)(H)(iii); and 20 C.F.R. § 416.987. Plaintiff requested reconsideration, and after a disability hearing, a Disability Hearing Officer determined Plaintiff is not disabled. (R. 16, 29, 36, 41-53). Thereafter, Plaintiff requested and was granted a hearing before an administrative law judge (ALJ). (R. 16, 54, 59-63). On January 24, 2008, while her request for a hearing was pending, Plaintiff filed an application for DIB alleging she became disabled October 1, 2006. (R. 435-36). The application was denied initially, and was escalated for a hearing with Plaintiff's SSI redetermination. (R. 16, 434). Plaintiff appeared with counsel for a hearing before ALJ Melvin B. Werner on November 24, 2008. (R. 16). At the hearing, testimony was taken from Plaintiff and from a vocational expert. (R. 16, 457-89).

ALJ Werner issued a decision finding that Plaintiff's childhood disability ended on June 1, 2007, and that Plaintiff had not become disabled as an adult within the meaning of the Act at any time on or after October 1, 2006. (R. 16-26). Consequently, he affirmed

2

termination of SSI benefits and denied Plaintiff's application for DIB. (R. 25-26).

Plaintiff requested, but was denied, Appeals Council review of the decision. (R. 8-12).

Therefore, the ALJ's decision is the final decision of the Commissioner. (R. 8); Cowan v.

Astrue, 552 F.3d 1182, 1184 (10th Cir. 2008). Plaintiff now seeks judicial review.

## II. Legal Standard

The court's jurisdiction and review are guided by the Act. Wall v. Astrue, 561

F.3d 1048, 1051-52 (10th Cir. 2009) (citing 42 U.S.C. § 405(g)); see also, 42 U.S.C.

§ 1383(c)(3) (final decision in an SSI case "shall be subject to judicial review as provided

in section 405(g) of this title"). Section 405(g) of the Act provides, "The findings of the

Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."

The court must determine whether the factual findings are supported by substantial

evidence in the record and whether the ALJ applied the correct legal standard. Lax v.

Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903,

905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a

preponderance, and it is such evidence as a reasonable mind might accept to support a

conclusion. Wall, 561 F.3d at 1052; accord, Gossett v. Bowen, 862 F.2d 802, 804 (10th

Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for

that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether

substantial evidence supports the Commissioner's decision, however, is not simply a

quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step, sequential process to evaluate disability. 20 C.F.R. §§ 404.1520, 416.920 (2008); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). However, in a disability redetermination for individuals who attain age eighteen, the Commissioner will not consider step one of the sequential process (whether the individual is engaged in substantial gainful activity). 20 C.F.R. § 416.987(b). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment, and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. If the claimant's impairments do not meet or equal a listed impairment, the Commissioner assesses her RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five-- whether claimant can perform her past relevant work, and whether, when considering vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (citing Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show jobs in the national economy within Plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff alleges five errors in the decision: (1) The ALJ erred at step five of his evaluation by relying upon the vocational expert's response to a hypothetical question which did not match with precision the RFC assessed by the ALJ. (2) The ALJ did not properly weigh the medical opinions. (3) The ALJ did not provide a proper narrative discussion, describing how the evidence supports each RFC conclusion. (4) The ALJ

erred in analyzing Listing 12.05C at step three of the evaluation process. And, (5) the ALJ did not properly evaluate the credibility of Plaintiff's allegations of symptoms. In her argument regarding credibility Plaintiff suggests that the ALJ's credibility evaluation in combination with his allegedly inappropriate questioning of the Plaintiff at the hearing, shows unwarranted bias. (Pl. Br. 28). The Commissioner opposes each allegation of error, and provides a separate argument that Plaintiff did not exhaust the question of bias before the Commissioner, and in any case has not met her burden to show bias.

The court addresses Plaintiff's allegations in the order presented in her brief, and finds error in considering Plaintiff's first argument. Therefore it is unnecessary to address her remaining allegations, and the court will briefly comment only on ambiguities in the ALJ's analysis of Listing 12.05C, so that matter may be clarified after remand.

Plaintiff's suggestion of bias on the part of the ALJ does not rise to the level of true argument. Plaintiff provides a single paragraph of discussion on this issue, in which she asserts "one may question whether the ALJ was biased" because of the ALJ's credibility analysis and, argues that the ALJ's "behavior toward Reynolds at the hearing provides <u>some</u> support for this concern." (Pl. Br. 28) (emphasis added). Plaintiff provides no citation to legal authority or legal standard for determining ALJ bias. The hearing behavior of which Plaintiff complains, is the ALJ's questions regarding drug use:

> Q. Okay. Now I have to ask, first because of your appearance and so forth, any, are you, do you have any involvement with either street drugs –
> A No.
> Q – or prescription medications?

| | A | No. |
| | Q | Okay. I expect you to be honest with me when I ask that. |
| | A | Yes, I'm honestly with you. |
| | Q | Okay, any charge that, or of a criminal nature? |
| | A | No. |

(R. 478). While this questioning may be blunt and inartful, and the question regarding charges of a criminal nature may even be improper, the ALJ received negative responses, and did not pursue the matter further. There is no indication counsel objected to the line of questioning, or that the ALJ improperly relied upon it in his decision. As the Commissioner argues, Plaintiff did not raise the issue at the administrative level; and the court finds no basis to pursue it here.

Plaintiff may make her remaining arguments, if desired, on remand.

**III.    Whether Substantial Evidence Supports the Step Five Determination**

Plaintiff claims that the ALJ did not meet his step-five burden because the RFC he assessed differed from the hypothetical presented to the vocational expert (VE) at the hearing. (R. 15). She argues that the ALJ asked if an individual who was "Moderately Limited" in the mental activities numbered 3, 5, 6, 7, 8, 9, 11, 17, and 20 on the Social Security Administration's (SSA) Mental Residual Functional Capacity Assessment (MRFC) form (SSA-4734-F4-SUP) (R. 403-06, 430-33) could perform jobs existing in the economy, and the VE responded that all work would be precluded in such a case. (PL. Br. 15) (citing (R. 482)). She argues that the ALJ then presented a hypothetical supposing that an individual had moderate limitations in mental activities numbered 3, 5, 6, 7, 9, 17, and 20, and only slight limitations in mental activities numbered 8, and 11;

7

and asked whether such an individual could perform jobs existing in the economy. Id. (citing (R. 485)). She argues that the VE responded that such an individual would be able to perform certain jobs which the ALJ ultimately found at step five to be representative of work of which Plaintiff is capable. Id. (citing (R. 25, 486-87)).

Plaintiff points to the RFC assessed in the decision, and asserts that the ALJ assessed moderate limitations in mental activities 3, 5, 6, 7, 9, 17, and 20, plus a moderate limitation in "her ability to perform 'at a consistent pace without an unreasonable number and length of rest periods.'" Id. (citing (R. 20)). Plaintiff notes that mental activity No. 11 from "the MRFC form refers to a person's 'ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.'" Id. (citing (R. 404)) (emphasis added). Plaintiff concludes that the RFC assessed by the ALJ is identical with neither the hypothetical question including moderate limitations in mental activity No. 11, nor the hypothetical question excluding moderate limitations in mental activity No. 11. Therefore she argues the ALJ's step-five determination, that there are jobs in the economy of which Plaintiff is capable, finds no support in the record evidence because it is not supported by any of the VE's responses. (Pl. Br. 15-16).

The Commissioner argues that a portion of mental activity No. 11 was included in the RFC assessment "in error by the ALJ or his decision writer; or that the ALJ intended for only part of No. 11 to be considered as less than moderate." (Comm'r Br. 15). In support of this assertion, the Commissioner argues that the record contains no evidence

8

Plaintiff is limited in her ability to perform at a consistent pace without an unreasonable number and length of rest periods.  Id.

As a preliminary matter, the court finds it necessary to address Plaintiff's argument that the Commissioner has the burden at step five in the evaluation process "to show that the claimant has the RFC to perform work in the national economy in view of his age, education, and work experience."  (Pl. Br. 14) (citing Bowen v. Yuckert, 482 U.S. 137, 142, 107 S. Ct. 2287, 2291 (1987); Williams, 844 F.2d at 751; 20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), 416.966; Soc. Sec. Ruling (SSR) 00-4p).  Plaintiff is correct that the Commissioner has the burden to show that there exists work in the economy of which Plaintiff is capable.  However, to the extent Plaintiff may be arguing that it is also the Commissioner's burden at step five to prove Plaintiff's RFC, that is erroneous.  As the court noted above, at step five the burden shifts to the Commissioner, but only to show jobs in the national economy within Plaintiff's capacity.  Blea, 466 F.3d at 907 ("the burden shifts to the Commissioner for the fifth and final part, to show that other work, which the claimant could perform given his residual functional capacity, existed in significant numbers in the national economy"); see also, Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999) ("the ALJ bears the burden at step five to show that there are jobs in the regional or national economies that the claimant can perform with the limitations the ALJ has found him to have.  It is not the claimant's burden to produce or develop vocational evidence at step five.") (citations omitted).  RFC will be assessed only if it is determined at step three that Plaintiff's condition does not meet or medically equal

the severity of a listed impairment. 20 C.F.R. §§ 404.1520(e), 416.920(e). At step four of the evaluation process, the RFC assessed after step three will be used to determine whether a claimant is able to perform her past relevant work, and if not, the same RFC assessment will be used at step five to determine if there is other work in the economy of which a claimant is capable. Id. §§ 404.1520(f, g), 416.920(f, g). Because RFC is assessed after step three and before step four, and because the burden of proof is on claimant through step four, it is claimant's burden to prove RFC.

The cases cited by Plaintiff do not require a different standard. The issue in Yuckert was whether the Secretary of Health and Human Services may deny a disability claim at step two based upon a finding that the claimant does not have a severe impairment. Yuckert, 482 U.S. 137 at 139. The Court determined that he may. Id., at 149-50. In reaching its determination, the Court recognized that the Act gave the Secretary express authority to place the burden of showing a medically determinable impairment on the claimant, and noted that the burden of proof did not shift to the Secretary till step five and that "This allocation of burdens of proof is well within the Secretary's 'exceptionally broad authority' under the statute." Id., at 146 & n.5. Moreover, the Yuckert opinion says nothing about the burden of proving RFC in general, or of proving RFC at step five in particular.

Although the decision in Williams might be read to imply that the Commissioner has the step-five burden of proving both RFC and that other work exists within Plaintiff's capacity, that is not the holding of the case. First, although Williams recognized that the

10

fifth step consists of "determining whether the claimant has the residual functional capacity (RFC) 'to perform other work in the national economy in view of his age, education, and work experience,'" and that the burden of proof shifts to the Commissioner at step five, it did not hold that the Commissioner has the burden of proof regarding RFC. Williams, 844 F.2d at 751 (citing Yuckert 482 U.S. 140-42, 146 n.5). Second, the sole authority cited in Williams for the proposition at issue is Yuckert, and as the court explained above, Yuckert does not address the burden of proof regarding RFC.

Moreover, the regulations were amended effective September 25, 2003 to clarify the "rules about when we assess your residual functional capacity (RFC)." Clarification of Rules Involving Residual Functional Capacity Assessment, 68 Fed. Reg. 51,153 (August 26, 2003). "Several of the revisions clarify our longstanding interpretation of our rules that we assess your RFC once, . . . after step 3 but before we consider step 4." Id. 68 Fed. Reg. 51,153 at 51,154. The shift in burden of proof at step five requires the Commissioner to prove there is other work which a claimant can do given her RFC, age, education, and work experience. Id. at 51,155. "That shift does not place on [the Commissioner] the burden of proving RFC." Id. Plaintiff has cited no case decided after the effective date of the Commissioner's clarifying regulations which finds the new regulation is erroneous, beyond the Commissioner's authority, or otherwise invalid, and she does not argue that it is invalid. Therefore, even if Williams stands for the proposition asserted (that the Commissioner has the burden of proof at step five to establish RFC) it is no longer valid law in that regard.

"'[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.'" Gay v. Sullivan, 986 F.2d 1336, 1340 (10th Cir. 1993). As Plaintiff argues, the ALJ presented two nearly identical hypotheticals to the VE which are relevant here. In one, the ALJ included moderate limitations in mental abilities No. 8 and 11, and the VE responded that with such limitations, all work would be precluded. (R. 482). Then the ALJ presented an identical hypothetical, but deleting moderate limitations in mental abilities No. 8 and 11. The VE responded, and provided a number of representative jobs of which such an individual would be capable. (R. 485-87). Thus, the record contains evidence that work is <u>unavailable</u> to an individual such as Plaintiff who has moderate limitations in mental abilities No. 8 and 11, and work is <u>available</u> to an individual such as Plaintiff who does not have moderate limitations in mental abilities No. 8 and 11. However, in his decision the ALJ found that Plaintiff has moderate limitations in <u>part</u> of mental ability No. 11 (performing at a consistent pace without an unreasonable number and length of rest periods) and is able to do the same representative jobs as if he had no moderate limitations in mental abilities No. 8 and 11. Because the VE testimony in response to the hypothetical questions did not relate <u>with precision</u> to <u>all</u> of Plaintiff's impairments, that testimony is not substantial evidence in support of the ALJ's finding that work exists in the national economy of which Plaintiff is capable. Since the ALJ found that Plaintiff has moderate limitations in performing at a consistent pace without an unreasonable number and length of rest periods, there is simply no evidence in the record

to support the ALJ's finding that there is work existing in significant numbers in the national economy of which Plaintiff is capable. This error necessitates remand.

The Commissioner's arguments are unavailing to save the decision. First, he argues that a moderate limitation in part of mental activity No. 11 (performing at a consistent pace without an unreasonable number and length of rest periods) was included in the RFC in error by the ALJ or his decision writer. The court notes that his argument is supported by the fact that the ALJ later stated he found Plaintiff was <u>not</u> significantly limited in certain mental abilities (including "perform at a consistent pace without an unreasonable number and length of rest periods") which had been assessed by Dr. Kaspar, the medical expert. (R. 23). However, in his step five evaluation, the ALJ once again stated that Plaintiff had moderate limitations in certain mental abilities, including the ability to "perform at a consistent pace without an unreasonable number and length of rest periods." (R. 25). There is no proper basis in these circumstances, beyond mere speculation, to find that the inclusion of this limitation in the RFC assessed was merely a typographical error. The court would have to assume that the ALJ (or his decision writer) made consistent, but not identical, typographical errors twice. In his RFC assessment the ALJ found a moderate limitation in "<u>performing</u> at a consistent pace without an unreasonable number and length of rest periods," (R. 20) (emphasis added), whereas in his step five evaluation the ALJ found moderate limitations in certain mental abilities including the ability to "<u>perform</u> at a consistent pace without an unreasonable number and length of rest periods." (R. 25) (emphasis added). The court may not assume that the

ALJ (or his decision writer) merely made a typographical error and then replicated an identical error by "cutting and pasting" to another place in the document because the alleged typographical errors are not identical.

Finally the Commissioner argues that there is no record evidence that Plaintiff was limited in her ability to perform at a consistent pace without an unreasonable number and length of rest periods. (Comm'r Br. 15). The court is not sure what the Commissioner intends by this argument, but it fails in any case. At the least, Dr. Kasper's testimony is evidence that Plaintiff has this limitation in her mental abilities, and therefore, the record evidence is not unequivocal. As previously noted, the court may not reweigh the evidence and determine whether Dr. Kasper is correct. Bowman, 511 F.3d at 1272; Hackett, 395 F.3d at 1172; Casias, 933 F.2d at 800. Therefore, it may not substitute its judgment for that of the ALJ in regard to this limitation. Further, even if the court were to weigh the evidence and find the limitation was inadequately supported by record evidence, the only recourse would be to remand for the Commissioner to properly evaluate the evidence. Therefore, the court will remand for the Commissioner to make a proper RFC assessment and a proper step five evaluation.

## IV.    Plaintiff's Remaining Claims

When the Commissioner performs an RFC assessment on remand, he will of necessity reconsider the credibility findings and the medical opinions, and will provide a narrative discussion explaining his assessment. Therefore, Plaintiff may make her related arguments on remand. Plaintiff also claims the ALJ performed an erroneous step three

analysis whether her condition meets or equals Listing 12.05C for mild mental retardation. The court notes that Plaintiff makes significant meritorious arguments in this regard, and suggests that they should be addressed by the Commissioner on remand. In particular, the ALJ found the IQ scores obtained by Dr. Schwartz are not valid because they are inconsistent with scores obtained when Plaintiff was six and twelve years old, despite Dr. Schwartz's determination that the scores are valid. (R. 20). However, as Plaintiff points out, the verbal IQ score on one of the tests cited by the ALJ was also below 70, the ALJ did not discuss IQ tests obtained when Plaintiff was ten and thirteen even though those tests also revealed verbal IQ scores below 70, and the ALJ failed to consider the Commissioner's acknowledgment in the regulations that IQ scores are relatively unstable for children below age 16, and should be viewed as valid only for certain limited periods of time. (Pl. Br. 23-24) (citing 20 C.F.R., Pt. 404, Subpt. P, App.1 § 112.00(D)(10)). The Commissioner should address these concerns on remand and should also perform another step three evaluation.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is REVERSED, and that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g), REMANDING the case for further proceedings consistent with this opinion.

Dated this 25th day of October 2010, at Kansas City, Kansas.

s/ John W. Lungstrum
**John W. Lungstrum**

**United States District Judge**